IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NUWAVE, LLC**, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| **INGENIOUS DESIGNS, LLC; and MING TSAI, an individual;** | JURY TRIAL DEMANDED |
| Defendants. | |

## VERIFIED COMPLAINT

Plaintiff NuWave, LLC ("Plaintiff" or "NuWave"), by its attorneys, as and for its

Complaint against Defendants Ingenious Designs, LLC and Ming Tsai (collectively referred to

as Defendants), alleges as follows:

## NATURE OF THE CASE

1.      This is an action for (1) patent infringement under the laws of the United States,

35 U.S.C. *et seq*.; (2) trade dress infringement in violation of the Lanham Act, 15 U.S.C. §§

1051-1127; (3) violation of the Illinois Consumer Fraud and Deceptive Business Practice Act;

and (4) unfair competition under Illinois common law.

2.      This case is brought to protect one of Plaintiff's most valuable assets, namely

Plaintiff's patented technology and the goodwill and consumer recognition in Plaintiff's

protectable configuration associated with its NuWave Precision Induction Cooktop® line of

products, including the original NuWave Precision Induction Cooktop®; the NuWave Precision

Induction Cooktop 2®; the PIC Gold; the PIC Pro; and other PIC variants[1], and to stop

---

[1] Some of these products were or are limited edition products or are otherwise not currently being sold by Plaintiff but may be present in the marketplace through secondhand sellers, and are likely still in customers' homes.

Defendants' unauthorized manufacture, offer for sale, sale, use, and/or importation of products (below, right) that utilize Plaintiff's patented technology and are nearly identical in appearance, and intentionally confusingly similar, to Plaintiff's distinctive and protectable configuration (below, left).




Plaintiff's Product                    Defendants' Product

## THE PARTIES

3.      Plaintiff NuWave, LLC is a privately owned company that specializes in designing, manufacturing, and selling various houseware small appliances such as, among other things, current and previously sold combination convection/conduction/infrared ovens, induction cooktops, and coffee roasters.  Plaintiff is an Illinois limited liability company with its principal place of business located at 1795 Butterfield Road, Libertyville, IL 60048.

4.      On information and belief, Defendant Ingenious Designs, LLC ("IDL") is a Delaware limited liability company with its principal place of business located at 2060 9th Avenue, Ronkonkoma, NY 11779.

5.      On information and belief, Defendant Ming Tsai is an individual residing in Wellesley, Massachusetts.  Defendant Tsai has had considerable intentional contacts with the State of Illinois and with this District, including contracting (through Defendant IDL) with Plaintiff in this District to promote Plaintiff's NuWave Precision Induction Cooktop® line of

2

products and selling the accused products to consumers in this District.

6.     On information and belief, IDL distributes and sells the accused products on behalf of Defendant Tsai including sales in the State of Illinois and in this District.

## Jurisdiction and Venue

7.     This Court has original jurisdiction over Plaintiff's federal claims namely; patent infringement, trade dress infringement, and unfair competition under 15 U.S.C. § 1121, pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b).  In addition, this Court has subject matter jurisdiction over Plaintiff's related state and common law claims under 28 U.S.C. 1338 and 1367.

8.     This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendants are engaging in various activities within this State and this District, including offering for sale, selling, using, distributing or importing their products in this District.  The consequences of Defendants' actions produce effects in and directly implicate this forum.

9.     All Defendants are properly joined in this action under 35 U.S.C. § 299 because Defendants' infringing acts arise out of the same transaction, occurrence, or series of transactions relating to the making, using, importing into the United States, offering for sale, and/or selling of the accused induction cooktops.  Defendants further are properly joined under 35 U.S.C. § 299 because questions of fact common to all Defendants exist.

10.     Venue is proper in this District under 28 U.S.C. § 1391 and 1400 because Plaintiff's claims arose in this District, at least a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendant is doing business in this District.

## PREVIOUS RELATIONSHIP BETWEEN
## PLAINTIFF AND DEFENDANT MING TSAI

11.     Defendant Tsai is a television personality who hosts various cooking and

cooking-related television shows.

12.    Plaintiff previously contracted with Defendant IDL for Defendant Tsai to advertise and promote Plaintiff's NuWave Precision Induction Cooktop® line of products.

13.    Accordingly, Defendants were intimately familiar with proprietary and/or confidential information pertaining to Plaintiff's products, including for example, the physical proprietary configuration of the NuWave Precision Induction Cooktop® line of products (described in more detail *infra*), the target audience for Plaintiff's products, the sales volume of Plaintiff's products, the instructional material included in the packaging of Plaintiff's products, and the marketing techniques Plaintiff has employed and the successes it has enjoyed. Defendants are thus also familiar with the good will and consumer recognition attached to Plaintiff's products.

## HISTORY OF NUWAVE, LLC AND THE DEVELOPMENT OF THE PROPRIETARY DESIGN FOR ITS NUWAVE PRECISION INDUCTION COOKTOP®

14.    Founded in 1997 as Hearthware Home Products, Inc., the company now known as NuWave, LLC is a leading designer, manufacturer and promoter of innovative household goods, including electric appliances, kitchenware and food storage.  Exemplary photographs of Plaintiff's innovative houseware appliances are shown in Exhibit A.

15.    NuWave has designed and marketed numerous successful and award winning household appliances it sells and previously sold in interstate commerce including, for example, its: NuWave® Oven, NuWave Infrared Oven Pro™, NuWave Infrared Oven Pro Plus™, Gourmet Coffee Roaster™, Precision Coffee Roaster®, i-Roast® Coffee Roaster, NuWave Twister™, NuWave Infrared Oven Mini™, NuWave Party Mixer™, NuWave Precision Induction Cooktop® (also known as the NuWave PIC®), NuWave Precision Induction Cooktop2® (also known as the NuWave PIC2®), NuWave Precision Induction Cooktop Pro®,

Duralon®, and its Flavor-Lockers®, just to name a few.

16.    The NuWave Precision Induction Cooktop® was first introduced to the market at least as early as 2011 and its second iteration, the NuWave Precision Induction Cooktop2®, was subsequently introduced to the market at least as early as 2013.  The distinctive, non-functional circular configuration for first and second models of the NuWave PIC® and PIC2® (collectively referred to herein as the "NuWave® Cooktops") did not change, and is believed to be well known to Plaintiff's customers and has become associated with the NuWave Precision Induction Cooktop®.  An exemplary picture of NuWave Precision Induction Cooktop® with its distinctive rounded appearance and design is shown below:



17.    Plaintiff's round-shaped configuration for its NuWave® Cooktops has been very successful and is well known in the marketplace.  The recognition of the NuWave® Cooktop's design is further enhanced by the extensive advertising efforts of Plaintiff and the fact that Plaintiff has received multiple awards, ratings, and recognitions associated with its various advertising campaigns for its products (by way of example only):

**2009**

o   4th Top Infomercial (for its Countertop Oven);

o Best Infomercial Direct Offer – Greensheet Award for Infomercial Excellence;

**2010**

o 2nd on Jordan Whitney's Top 100 Infomercials and DRTC Short-Form Spots (for its Countertop Oven);

o Number One Ranking on the Jordan Whitney Top 60 Infomercial Chart – Greensheet Awards for Infomercial Excellence (for its NuWave Oven);

**2011**

o Marketer of the Year DRMA Award – Direct Response Marketing Alliance;

o Aurora Award by Concepts TV (for its PerfectGreen Fry Pan);

o 1st on the Top 100 Housewares Infomercials;

o 3rd on the IMS Top 50 Infomercials and Spots of 2011 (for its NuWave Oven);

**2012**

o Infomercial of the Year – Greensheet Awards for Infomercial Excellence (for its NuWave Oven Pro);

o Nominated for Marketer of the Year DRMA Award – Direct Response Marketing Alliance;

o NuWave Precision Induction Cooktop becomes the No. 1 selling housewares infomercial in the U.S.

**2013**

o Best Infomercial Demonstration – Greensheet Awards for Infomercial Excellence (Bob Warden – NuWave Precision Induction Cooktop);

o NuWave Precision Induction Cooktop becomes the No. 1 selling housewares infomercial in the U.S.; and

o Best Housewares Infomercial – Greensheet Awards for Infomercial Excellence (for its NuWave Precision Induction Cooktop).

18.    Additionally, Plaintiff has spent millions of dollars on its advertising campaigns

and TV infomercials related to its NuWave® Cooktops, including advertising campaigns that
included endorsements from Defendant Tsai garnered through Defendant IDL.  Accordingly,
Defendants have been well aware of the marketing efforts and successes of Plaintiff.

19.     Plaintiff continues to spend significant resources every week in advertising and
marketing its products, in particular, the NuWave® Cooktops, through various past and current
media such as internet advertising, short and long form of TV infomercials, trade shows, and
social media advertising, just to name a few.

20.     In particular, Plaintiff has had numerous top performing infomercials that
advertise and promote its various products, including, without limitation, the NuWave®
Cooktops.

21.     Plaintiff also spends, and has spent, millions of dollars researching and designing
("R&D") its products, including without limitation, the NuWave® Cooktops.  .

22.     These R&D expenses are directed toward the technology encompassed in the
products as well as the design and image of the products themselves and their packaging.

23.     Customers that purchase products from Plaintiff have come to expect a high level
of quality in these products, and this expectation of quality is further enhanced by the extensive
awards, ratings, and recognitions Plaintiff has received for its various products.

24.     The following list includes just a few of the awards, ratings and recognitions
associated with Plaintiff's product innovations and designs:

**<u>1998</u>**

o   Best of Aisle Winner – The Gourmet Retailer (for its Gourmet Coffee
    Roaster);

**<u>1999</u>**

o   Best New Product Concept Award – Specialty Coffee Association of

America;

o   Best New Concept Award – Specialty Coffee Association of America;

**<u>2000</u>**

o   Best New Product – Coffee Fest (for its Precision Coffee Roaster);

o   Gold Medal for Excellence – Award of The Americas;

**<u>2001</u>**

o   Gold Medal for Excellence – Award of The Americas;

**<u>2002</u>**

o   Gold Medal for Excellence – Award of The Americas;

**<u>2003</u>**

o   Gold Medal Seal for Performance – Quality Institute International (formerly Award of The Americas);

**<u>2004</u>**

o   Best Product Award – American Culinary Institute (formerly Award of the Americas);

**<u>2005</u>**

o   Best Product Award – American Culinary ChefsBest (formerly Award of the Americas);

**<u>2006</u>**

o   Best Performance Award – American Culinary ChefsBest (formerly Award of the Americas);

**<u>2007</u>**

o   Best Performance Award – American Culinary ChefsBest (formerly Award of the Americas);

**<u>2012</u>**

o   Editors' Pick in the Small Electronics Category – The Gourmet Retailer (for

its NuWave Precision Induction Cooktop); and

o   Best New Design finalist – 2012 Housewares Design Awards (for its NuWave
    Precision Induction Cooktop)

**2015**

o   Editors' Pick in the Housewares category (for its NuWave PIC Gold)

25.     The above-listed awards, ratings and recognitions for Plaintiff's advertising
campaigns and product designs are no accident; as Defendants know, Plaintiff spends countless
hours crafting and designing products and advertising campaigns that demonstrate recognizable
elements to strengthen its brand and design recognition in the competitive housewares market.

26.     Since the initial launch of its NuWave® Cooktops, Plaintiff has continuously
advertised and promoted the total image, shape, configuration, overall look, appearance and
impression of the NuWave® Cooktops; and, as a result, Plaintiff has acquired a valuable
reputation and goodwill among the public as a result of such association.

27.     Unlike the conventional portable induction cooktops, the NuWave® Cooktops
exhibit a unique rounded design configuration that make them readily identifiable to customers
and potential customers.

28.     Prior to Defendants' acts described herein, Plaintiff's NuWave® Cooktops have
achieved substantial commercial success. In fact, since introduction to the United States, the
sales of the NuWave® Cooktop products have reached well over millions of dollars annually.

29.     The approximate total retail value of the units sold from 2011 to date is in excess
of $300,000,000.

30.     Total advertising and marketing expenditures during this period were in excess of
$100,000,000.

31.     Plaintiff's rounded design configuration for its NuWave® Cooktops is not

functional. The rounded design configuration is not essential to the use or purpose of portable induction cooktops, does not affect the cost or quality of portable induction cooktops, and the inability to use the rounded configuration does not put Plaintiff's competitors at a significant non-reputation-related disadvantage.

32. Plaintiff also takes effort to protect the intellectual property rights associated with its products, including the NuWave® Cooktops, and has received numerous patents and trademark registrations protecting its inventions and marks.

33. Prior to Defendants' acts described herein, Plaintiff has been granted the following U.S. Patents covering its various products:

| U.S. Patent No. | Title |
|---|---|
| 9,226,343* | Apparatus, System, Method and Computer Program Product for Precise Multistage Programmable Induction Cooktop |
| 8,835,810 | System and Method for a Programmable Counter-Top Electric Dehydrator |
| D714,583 | Silicone Divider and Bake Pan |
| D734,091 | Pan |
| 5,564,331 | Apparatus for Roasting Coffee Beans |
| 6,201,217 | Counter-Top Electric Cooker |
| 6,617,554 | Counter-Top Electric Cooker having a Safety Shut-Off Switch |
| 6,770,315 | Coffee Roaster Having Multiple Roasting Stages |
| 6,809,297 | Combination Rotisserie and Convection Oven Having Movable Heating Element |
| 6,917,017 | Counter-Top Cooker Having Multiple Heating Elements |
| 6,936,795 | Method and Apparatus for Securing a Power Head on an Electric Cooker |
| 7,360,481 | Coffee Roaster Having an Apparatus for Increasing Airflow in a Roasting Chamber |
| D487,670 | Control Panel for a Counter-Top oven |
| D490,648 | Power Head for Counter-Top Oven |
| 6,747,250 | Counter-Top Electric Oven |
| 7,964,824 | System, Method and Computer Program Product for Programmable Counter-Top Electric Oven |
| 8,330,083 | Portable Countertop Electric Oven |
| D651,456 | Portable Countertop Electric Oven |
| D651,448** | Cooktop |
| D651,040 | Mixer |
| D651,851 | Grill |

10

| D693,643 | Power Head For a Portable Countertop Electric Oven |
| D651,850 | Cooking Housing For a Portable Countertop Electric Oven |
| D663,746 | Pump |
| D693,627 | Pan |

*One of the patents in suit (the '343 Patent).
** One of the patents in suit (the '448 Patent).

34.     Prior to the Defendants' acts described herein, Plaintiff has also obtained the

following trademark registrations for the marks associated with its various products, including

the NuWave® Cooktops:

| U.S. Trademark Registration No. | Mark |
| --- | --- |
| 4,770,030 | ALSET |
| 4,704,906 | NUWAVE PRO PLUS INFRARED OVEN |
| 4,119,622 | DURALON |
| 4,665,310 | PIC |
| 4,652,905 | NUWAVE INFRARED OVEN ELITE |
| 4,649,251 | NUWAVE PRECISION PRESSURE COOKER |
| 4,562,948 | PERFECTGREEN |
| 4,488,601 | NUWAVE FLAVOR LOCKERS |
| 4,608,294 | NUWAVE MINI INFRARED OVEN |
| 4,608,291 | NUWAVE MINI INFRARED OVEN |
| 4,488,129 | NUWAVE PIC2 |
| 4,511,178 | LIVE WELL FOR LESS |
| 4,610,628 | NUWAVE PRECISION INDUCTION COOKTOP 2 |
| 4,610,627 | NUWAVE PRECISION INDUCTION COOKTOP PRO |
| 4,360,836 | NUWAVE PRECISION INDUCTION COOKTOP |
| 4,419,677 | WHIP-IT |
| 4,426,391 | NUWAVE COOKTOP |
| 4,426,387 | NUWAVE PRECISION |
| 4,426,385 | NUWAVE PIC |
| 4,522,340 | LIVING WELL FOR LESS |
| 4,119,622 | DURALON |
| 4,180,156 | FLAVOR-LOCKERS |
| 4,176,420 | FLAVOR LOCKERS |
| 3,265,034 | NUWAVE PRO INFRARED OVEN |
| 3,474,134 | TWISTER NUWAVE |
| 2,826,443 | NU WAVE |
| 3,802,040 | MORNINGWARE |
| 3,459,089 | WHIPTIDE |
| 2,841,073 | I-ROAST |
| 3,624,986 | PRECISION COFFEE ROASTER |

35.     As a result of Plaintiff's substantial and continuous advertising and promotion of the NuWave® Cooktops (including the total image, rounded shape, configuration, overall look, appearance and impression of the NuWave® Cooktops), Plaintiff also has protectable rights in several unregistered common law trademarks and trade dress associated with the NuWave® Cooktops.

36.     As a result of its unique and distinctive design, as well as Plaintiff's extensive advertising and promotion of the NuWave® Cooktops, the total image, rounded shape, configuration, overall look, appearance and impression of the NuWave® Cooktops have caused a relevant segment of the general public to now associate the NuWave® Cooktops with Plaintiff and Plaintiff's brand name, and Plaintiff's has acquired a valuable reputation and goodwill among the public as a result of such association. Plaintiff's NuWave® Cooktops configuration is an intellectual property asset of enormous value as symbols of Plaintiff and its quality products, reputation, and goodwill.

37.     In contrast, on information and belief, notwithstanding Defendants' infringing conduct discussed herein and other infringing designs, no other countertop induction cooktops in the United States market feature a similar shape or configuration.

38.     Exemplary pictures of competing induction cooktops with either a square or rectangular top surface are shown below:



12

39.     The unique rounded design configuration in Plaintiff's NuWave® Cooktops has become associated with Plaintiff through extensive advertising and marketing, award recognitions, and substantial sales.

40.     Because customers have come to associate the design of the NuWave® Cooktops with Plaintiff through Plaintiff's past and current internet advertising, short and long form of TV infomercials, trade shows, and social media advertising, the inclusion of that design on the product packaging assists potential customers in finding Plaintiff's products in the crowded housewares market, and in particular in comparison to other countertop cooktops.

41.     In other words, customers remember the circular shape from Plaintiff's internet advertising, short and long form of TV infomercials, trade shows, and social media advertising, and associate the NuWave® Cooktops with such marketing when they encounter the cooktops in the marketplace.

42.     On account of the strong association between Plaintiff and its product design, the trade dress associated with the NuWave® Cooktops has acquired a secondary meaning in the marketplace.

## NuWave and Its Patents

43.     Plaintiff is the assignee and current owner of all right, title and interest in U.S. Patent 9,226,343 ("the '343 patent," Exhibit B), which is titled "APPARATUS, SYSTEM, METHOD AND COMPUTER PROGRAM PRODUCT FOR PRECISE MULTISTAGE PROGRAMMABLE INDUCTION COOKTOP," of which the NuWave® Cooktop is an embodiment.

44.     The '343 patent was duly and legally issued by the U.S. Patent and Trademark Office on December 29, 2015.

13

45.     Plaintiff is also the assignee and current owner of all right, title and interest in U.S. Design Patent D651,448 ("the '448 Patent," Exhibit C), which is titled "Cooktop," of which the NuWave® Cooktop is an embodiment.

46.     The '448 Patent was duly and legally issued by the U.S. Patent and Trademark Office on January 3, 2012.

### Defendant's Infringing and Unfair Conduct

47.     On information and belief, in or about 2016, Defendants introduced an induction cooktop under the name Simply Ming Power Induction Burner, or Ming Tsai Power Induction Cooking Station (the "Ming Cooktop" or "accused products").

48.     Defendants are competitors of NuWave.

49.     Defendants are marketing, advertising, making, using, importing, selling and offering for sale the Ming Cooktop, which is substantially similar and virtually identical to, and therefore infringes, the ornamental design embodied by the NuWave® Cooktop (*i.e.*, the unregistered trade dress rights associated with the NuWave® Cooktop); infringes upon one or more claims of the '343 Patent; and infringes upon the claim of the '448 Patent.

50.     On information and belief, Defendants are marketing, advertising, making, using, importing, selling, and offering for sale the infringing Ming Cooktop throughout the United States through the Home Shopping Network via its television broadcasts and the www.hsn.com website.  *See* Exhibit D, Screenshot of Simply Ming 1800W Portable Induction Cooking Station product page from www.hsn.com.

51.     On information and belief, Defendants' products are also available on the internet through other retailers.

52.     The Ming Cooktop infringes at least one claim of the '343 Patent, including at

14

least Claims 1 and 22 of the '343 Patent.

      53.    Claim 1 of the '343 Patent claims:

A countertop induction cooking system, comprising:
a circular induction cooking unit comprising:
    a circular flat, heat resistant, glass or ceramic top surface fixedly coupled to, and not independent from, said circular induction cooking unit, said circular flat, heat resistant, glass or ceramic top surface horizontally planar throughout and configured to receive induction cookware thereupon,
    wherein said circular induction cooking unit comprises:
      at least one induction electromagnetic coil located below said circular flat, heat resistant, glass or ceramic top surface;
    avoiding a slow cooker heating unit;
    wherein said circular flat, heat resistant, easy to clean, glass or ceramic top surface coupled to said circular induction cooking unit comprises:
      an extended glass or ceramic surface configured to extend to the edge of said circular induction cooking unit; and
    at least one fan and at least one vent;
    an interface, coupled to said circular induction cooking unit, said interface configured to receive at least one user selected direct command, to store said at least one user selected direct command, and to execute said at least one user selected direct command,
    wherein said interface further comprises:
      a plurality of non-numeric buttons configured to program said user selected direct command of said circular induction cooking unit comprising at least one of:
      a program button configured to receive a user selected direct command;
      a time button configured to receive a user selected direct command;
      a temperature level button;
      an increase time or temperature button;
      a decrease time or temperature button;
      a start program button; or
      a cancel program button;
a power supply configured to couple said at least one induction electromagnetic coil of said circular induction cooking unit to an external power source;
an electronic controller comprising:
    at least one processor coupled to said power supply, said interface, said at least one fan, and said at least one induction electromagnetic coil of said circular induction cooking unit, wherein said controller is configured to control said at least one induction electromagnetic coil of said circular induction cooking unit according to said at least one user selected direct,
    wherein said at least one user selected direct command is configured to program a multistage programmable recipe comprising at least one temperature or time using induction cooking.

Exhibit B, col. 35-36.

54.     The Ming Cooktops are countertop induction cooking systems that include circular induction cooking units, circular glass or ceramic top surfaces, at least one vent, an interface, a plurality of non-numeric buttons, a power supply, and an electronic controller as cited and defined in Claim 1.

55.     In fact, Defendants copied the NuWave® Cooktop (the commercial embodiment of the '343 Patent) so closely that they have included all of the alternative buttons recited in Claim 1.

56.     Further Claim 22 of the '343 Patent claims:

A method of induction cooking comprising:
placing at least one induction cookware on a circular horizontally planar top surface fixedly coupled to, and not independent from, a circular induction cooking unit;
receiving at least one user selected direct command at an interface of a circular induction cooking unit
wherein said circular induction cooking unit comprises:
at least one induction electromagnetic coil located below said circular flat, heat resistant, glass or ceramic top surface;
avoiding a slow cooker heating unit;
wherein said circular flat, heat resistant, glass or ceramic top surface coupled to said circular induction cooking unit comprises:
an extended glass or ceramic surface configured to extend to the edge of said circular induction cooking unit;
at least one fan and at least one vent; and
wherein said interface further comprises:
a plurality of non-numeric buttons configured to program said user selected direct command of said circular induction cooking unit comprising at least one of:
a program button configured to receive a user selected direct command;
a time button configured to receive a user selected direct command;
a temperature level button;
an increase time or temperature button;
a decrease time or temperature button;
a start program button; or
a cancel program button;
ventilating said circular induction cooking unit using said at least one vent and said at least one fan;

16

storing said at least one user selected direct command in at least one memory
within said circular induction cooking unit;

executing said at least one user selected direct command by at least one processor
of an electronic controller coupled to said at least one memory and said circular
induction cooking unit, said electronic controller, and said at least one memory
electronically coupled to said at least one fan, and said interface; and

controlling electronically said circular induction cooking unit in accordance with
said at least one user selected direct command,

wherein said at least one user selected direct command is configured to program a
multistage programmable recipe comprising at least one temperature or time
using induction cooking.

Exhibit B, col.39-40.

57.    The operation of the Ming Cooktops by Defendants customers necessarily
infringes upon Claim 22 of the '343 Patent.

58.    Similarly, Defendants instruct end users to use the Ming Cooktops in an
infringing manner including by the operations taught and described in the Quick Start Guide
attached as Exhibit E and discussed *infra*.

59.    In the eye of an ordinary observer, giving such attention as a purchaser usually
gives, the patented design of the '448 patent and the design of the Ming Cooktop are
substantially the same and virtually identical, so as to deceive and induce the observer into
purchasing the Ming Cooktop, under the mistaken belief that it is the NuWave® Cooktop.

60.    Viewed as a whole, consumers are confusing the product design of the Ming
Cooktop and the product design of the NuWave® Cooktop, both of which are illustrated below:

 

NuWave® Cooktop                                   Ming Cooktop

61.     On information and belief, customers are being led to believe that the NuWave®

Cooktop and the Ming Cooktop are the same.

62.     On information and belief, on at least one occasion, a previous NuWave customer

purchased a Ming Cooktop based on a mistaken belief that the Ming Cooktop originated from

NuWave.  This customer, under the username Joy6777, left a review for the Ming Cooktop

(attached hereto as Exhibit F) and stated:

> I own the original Nuwave and the Nuwave Pro so I was confident about ordering
> this induction burner. The burner vibrated so much that my Simply Ming pan
> shimmied to the edge of the burner. Good thing I was in the kitchen or the pan
> would have gone off the edge of the burner. This isn't my first return of Simply
> Ming products. Also had to return the multicooker. I love the pans but I'm going
> to try another chef's brand in the future.

*See* Exhibit F.

63.     Additionally, the non-functional product design of the NuWave® Cooktop has

acquired a secondary meaning and consumers associate its unique, distinctive product design

with Plaintiff.  Accordingly, the Ming Cooktop, which is substantially similar and virtually

identical to the NuWave® Cooktop, infringes upon the unregistered trade dress associated with

the NuWave® Cooktop.

64.     Among other reasons why the NuWave® Cooktop's design has acquired a

18

secondary meaning, as discussed above, Plaintiff has invested significant marketing and advertising resources in connection with that product, which is featured on numerous websites, in catalogs, trade shows, social media, just to name a few, that are in circulation in over 70 million homes, and on TV infomercials, on a regular basis, which has a viewership in excess of 15 million households.

65.     Among other reasons, the design of the NuWave® Cooktop has acquired a secondary meaning because, as discussed above, Plaintiff has enjoyed significant sales of that product throughout the United States, as well as sales in Europe and in Australia.

66.     Among other reasons, the design of the NuWave® Cooktop has acquired a secondary meaning because, as discussed above, Plaintiff has received multiple awards, ratings, and recognitions associated with Plaintiff's advertising campaigns for the NuWave® Cooktop.

67.     Plaintiff began selling the NuWave® Cooktop with its unique and distinctive circular design well prior to Defendants' sale of the Ming Cooktop, and, as a result, has priority over the design.

68.     The substantial similarities between the design of the Ming Cooktop and the circular design of the NuWave® Cooktop are causing consumers to confuse, mistake, or to be deceived about an affiliation, connection, or association between Defendants and Plaintiff and their respective products, when they are not.

69.     The substantial similarities between the design of the Ming Cooktop and the design of the NuWave® Cooktop are causing consumers to be deceived as to the origin of the NuWave® Cooktop or the Ming Cooktop, as well as Plaintiff's sponsorship, or approval of the Ming Cooktop.

70.     Defendants' infringement of the design of the NuWave® Cooktop is willful and

deceptive, as the Ming Cooktop is intended to copy Plaintiff's product design, causing irreparable harm to Plaintiff.

71.     Defendants' acts of copying extend even further than the external design of the Ming Cooktop.

72.     In particular, Defendants have included buttons, button descriptions, and button configurations on the control panel of the Ming Cooktop that are identical to the same on Plaintiff's NuWave® Cooktop.

73.     Additionally, Defendants have copied large portions of the literature that are included with the competing products.

74.     Attached as Exhibit G is a copy of a one page "Quick Start Guide" that Plaintiff includes in the packaging of the NuWave® PIC Cooktop.

75.     Attached as Exhibit E is a copy of a one page "Quick Start Guide" included in the packaging of the infringing Ming Cooktops.

76.     Even a cursory review of the Quick Start Guides shown in Exhibits E and G shows that they are substantially the same and in large parts identical.

77.     A closer review of the Quick Start Guides and the competing products shows direct evidence of Defendants' copying.

78.     As shown in Exhibit E, and in the annotated excerpt copied below, various buttons in Defendants' Quick Start Guide for the Ming Cooktops show an LED light in a bottom corner of the buttons:



79.     As shown in the excerpt of Plaintiff's Quick Start Guide copied below, the graphic representations of buttons in Defendants' Quick Start Guide are lifter straight out of Plaintiff's Quick Start Guide:



80.     In fact, the location of the LED light on the graphical representation of the buttons is direct evidence of copying.

81.     As shown below, Plaintiff's NuWave® Cooktop (left image) has the LED light located in the bottom left corner of the buttons, corresponding to the position shown in the Quick Start Guides; while Defendants' infringing Ming Cooktops have the LED lights located in the top right corner of the buttons:



"Max/Sear" Button on
NuWave® Cooktop

"Max/Sear" Button on
Ming Cooktops

82.     In fact, the entire orientation of the button panel on the Ming Cooktops is a near

exact copy of the button panel of the NuWave® Cooktops.  In particular, as shown in the images

below, Defendants have copied all of the buttons and placed them in the identical orientation as

on the NuWave® Cooktops.



Control Panel on NuWave® Cooktop

Control Panel on Ming Cooktop

83.     Defendants also directly copied large portions of Plaintiff's instruction manual

(Plaintiff's PIC 2 Instruction Manual attached as Exhibit H; Defendants' Instruction Manual

attached as Exhibit I).

84.     To further demonstrate the blatant copying; attached as Exhibit J is an annotated

version of Defendants' Instruction Manual wherein the portions that are identical to (*i.e.*, copied

from) Plaintiff's Instruction Manual have been highlighted.

85.     Because Plaintiff's NuWave® Cooktops have been in the market for several

years, and further because Defendant Tsai is a former endorser of Plaintiff's NuWave®

Cooktops, Defendants have had access to the copyrighted images and text incorporated in Plaintiff's Quick Start Guide and Instruction Manual.

86.     These acts of copying further demonstrate the acquired distinctiveness of Plaintiff's product design because they demonstrate that Defendants intended to pass-off their product as the NuWave® Cooktop.

87.     By virtue of the acts complained of herein, Defendants have created a likelihood of injury to Plaintiff's business reputation and goodwill; caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Plaintiff's and Defendants' goods; and has otherwise competed unfairly with Plaintiff by unlawfully trading on and using Plaintiff's rounded configuration, patented technology, and copyrighted material without Plaintiff's permission or consent.

88.     The NuWave® Cooktops and the Ming Cooktops are sold through the same or similar channels on the internet and are similarly advertised on television.

89.     On account of the substantial recognition of the design of the NuWave® Cooktops and the strong association between that design and Plaintiff and its products, there is a strong likelihood that consumers will be confused to believe that the Ming Cooktops are Plaintiff's products or that they are authorized, endorsed, sponsored or approved by Plaintiff.

90.     On account of the substantial recognition of the design of the NuWave® Cooktops and the strong association between that design and NuWave and its products, there is a strong likelihood that customers will be confused into believing that the infomercials and advertising campaigns related to the NuWave® Cooktops are promoting the Ming Cooktops, when they are not.

**COUNT ONE**
**Trade Dress Infringement (Induction Cooktops)**

91.     Plaintiff NuWave, LLC incorporates by reference paragraphs 1 through 90 above as if restated herein in their entirety.

92.     By selling the Ming Cooktops, Defendants are infringing Plaintiff's trade dress rights, namely, the distinctive product designs of the NuWave® Cooktop.

93.     Consumers are confusing the Ming Cooktop's design with the NuWave® Cooktop's design because they are virtually identical in appearance.

94.     Defendants' marketing, advertising, and sale of the Ming Cooktop is causing consumers and the general public to erroneously believe that Plaintiff is the origin of, sponsors, and approves those products and that the Ming Cooktops are the same products as the NuWave® Cooktop.

95.     Defendants' marketing, advertising, and sale of the Ming Cooktops is a violation of the Lanham Act, 15 U.S.C. § 1125.

96.     As a result of Defendants' infringement of Plaintiff's rights to trade dress in its product designs, Plaintiff is suffering irreparable harm, including but not limited to, the loss of goodwill it has built with consumers through its own extensive marketing, advertising, and sale of the NuWave® Cooktop, among other irreparable harm.

97.     Plaintiff has no adequate remedy at law for Defendants' actions, entitling it to injunctive relief.

98.     Defendants' infringing activities are willful and intentional, making this an exceptional case and justifying the imposition of treble damages pursuant to 15 U.S.C. § 1117.

99.     Plaintiff is also entitled to recover monetary damages, including, but not limited to, Defendants' profits, actual damages, costs, and treble damages.

## COUNT TWO
## Common Law Unfair Competition

100.     Plaintiff NuWave, LLC incorporates by reference paragraphs 1 through 99 above as if restated herein in their entirety.

101.     By marketing, advertising and selling the Ming Cooktops, Defendants are acting with the purpose and intent to deceive consumers into believing that the Ming Cooktop is the NuWave® Cooktop.

102.     By marketing, advertising, and selling the Ming Cooktops, Defendants intend to harm and are, in fact, harming Plaintiff's business.

103.     As a result of Defendants' unfairly competitive activities, Plaintiff has been damaged and will continue to be damaged unless Defendants are enjoined from advertising and selling the Ming Cooktops.

104.     Plaintiff is also entitled to recover monetary damages as a result of Defendants' actions.

## COUNT THREE
## Patent Infringement (U.S. Patent No. D651,448)

105.     Plaintiff NuWave, LLC incorporates by reference paragraphs 1 through 104 above as if restated herein in their entirety.

106.     Defendants have directly infringed, and continue to directly infringe the '448 patent by making, importing, using, offering to sell and/or selling the infringing Ming Cooktops.

107.     Defendants have infringed and continue to infringe the '448 patent by contributing to and/or actively inducing direct infringement of the '448 patent by others.  The infringing activities by Defendants include, encouraging, aiding and abetting others to make, import, use, offer to sell, and/or sell the infringing Ming Cooktops in the United States.

108.    Defendants had notice of the '448 patent by virtue of Plaintiff marking its NuWave® Cooktop with notice of the '448 patent.

109.    Plaintiff has provided virtual marking of the '448 patent pursuant to 35 U.S.C. § 287(a).

110.    Defendants have, with reckless disregard of the '448 patent and Plaintiff's rights under that patent, willfully and wantonly infringed the '448 patent, entitling Plaintiff to treble damages under 35 U.S.C. § 284.  This conduct further warrants a finding that this case is exceptional under 35 U.S.C. § 285, entitling Plaintiff to an award of its reasonable attorney fees.

111.    By reason of Defendants' infringement of the '448 patent, Plaintiff has and will continue to suffer substantial irreparable damage and injury, the full extent of which is presently unknown.  Defendants have benefitted from their unlawful infringement of the '448 patent and will continue to be unjustly enriched unless and until enjoined by this Court.

## COUNT FOUR
## Patent Infringement (U.S. Patent No. 9,226,343)

112.    Plaintiff NuWave, LLC incorporates by reference paragraphs 1 through 111 above as if restated herein in their entirety.

113.    Defendants have directly infringed, and continue to directly infringe the '343 patent by making, importing, using, offering to sell and/or selling the infringing Ming Cooktops.

114.    Defendants have infringed and continue to infringe the '343 patent by contributing to and/or actively inducing direct infringement of the '343 patent by others.  The infringing activities by Defendants include, encouraging, aiding and abetting others to make, import, use, offer to sell, and/or sell the infringing Ming Cooktops in the United States.

115.    Plaintiff has provided virtual marking of the '343 patent pursuant to 35 U.S.C. § 287(a).

116.     Defendants have, with reckless disregard of the '343 Patent and Plaintiff's rights under that patent, willfully and wantonly infringed the '343 Patent, entitling Plaintiff to treble damages under 35 U.S.C. § 284.  This conduct further warrants a finding that this case is exceptional under 35 U.S.C. § 285, entitling Plaintiff to an award of its reasonable attorney fees.

117.     By reason of Defendants' infringement of the '343 Patent, Plaintiff has and will continue to suffer substantial irreparable damage and injury, the full extent of which is presently unknown.  Defendants have benefitted from their unlawful infringement of the '343 Patent and will continue to be unjustly enriched unless and until enjoined by this Court.

## COUNT FIVE
### (Violation of Illinois Deceptive Trade Practices Act)

118.     Plaintiff NuWave, LLC incorporates by reference paragraphs 1 through 117 above as if restated herein in their entirety.

119.     Through their sale of the Ming Cooktop with designs that are being confused with the unique, distinctive design of the NuWave® Cooktop, incorporating Plaintiff's patented technology, and copying Plaintiff's copyrighted material, Defendants are violating the Illinois' Deceptive Trade Practice Act:

120.     By creating confusion and misunderstanding as to the source, sponsorship, approval, and certification of the Ming Cooktop, namely, that Plaintiff is the source of, sponsors, approves, and certifies those product; and by creating confusion and misunderstanding as to their affiliation, connection, and association with Plaintiff and the NuWave® Cooktop, Defendants' willful and deceptive actions are influencing consumers' purchasing decisions.

121.     As a result of Defendants' deceptive trade practices, Plaintiff is suffering irreparable harm to the goodwill it has built with consumers through its own extensive marketing, advertising, and sale of its NuWave® Cooktop, among other irreparable harm.

27

122.    Plaintiff has no adequate remedy at law for Defendants' actions, entitling it to injunctive relief.

123.    Plaintiff is also entitled to recover monetary damages as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff NuWave, LLC respectfully seeks the following relief against Defendants:

A.    Judgement that Defendants' conduct violates Plaintiff's trade dress rights, in violation of 15 U.S.C. § 1125;

B.    Damages in an amount to be proven at trial, in the form of Defendants' profits, actual damages suffered by Plaintiff, compensation for corrective advertising and attorneys' fees, in accordance with 15 U.S.C. § 1117;

C.    Judgement that Defendants' conduct infringes Plaintiff's patent rights in the '448 Patent, in violation of 35 U.S.C. § 271;

D.    Judgement that Defendants' conduct infringes Plaintiff's patent rights in the '343 Patent, in violation of 35 U.S.C. § 271;

E.    Monetary damages in an amount to be proven at trial, in the form of Defendant's total profits, Plaintiff's lost profits or, in the alternative, a reasonable royalty based upon Defendants' sales;

F.    Treble damages as a result of the willful and deliberate nature of Defendants' infringement, in accordance with 35 U.S.C. § 284;

G.    Attorneys' fees, in accordance with 35 U.S.C. § 285;

H.    A preliminary, mandatory, and permanent injunction enjoining, restraining and

ordering Defendants, and their respective officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them:

1. To cease advertising, promoting, making, using, offering to sell, selling, and/or importing Defendants' infringing Ming Cooktops, and any other product that is substantially the same as, or confusingly similar in appearance to Plaintiff's design, the '448 patent, and/or the NuWave® Cooktop;

2. To cease advertising, promoting, making, using, offering to sell, selling, and/or importing Defendants' infringing Ming Cooktops, and any other product that is infringes the '343 patent; and

3. To deliver and destroy all inventory of, and all literature, advertisements, and other materials displaying the Ming Cooktops or any product that is substantially the same as, or confusingly similar in appearance to the NuWave® Cooktop;

I. Attorneys' fees, pre-judgment interest, and post-judgment interest; and

J. For all other relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

DATED: January 18, 2017                    Respectfully submitted by,

/s/Edward L. Bishop
Edward L. Bishop
ebishop@bishoppatents.com
Nicholas S. Lee
nlee@bishoppatents.com
Benjamin A. Campbell
bcampbell@bishoppatents.com
BISHOP DIEHL & LEE, LTD.
1475 East Woodfield Road

Suite 800
Schaumburg, IL 60173
Phone: (847) 969-9123
Fax: (847) 969-9124

*Attorneys for Plaintiff NuWave, LLC*

## VERIFICATION

I, Gene H. Kim, hereby certify as follows:

1.  I am the Executive Vice President of NuWave, LLC. As such, I am authorized to make this Verification on NuWave LLC's behalf.

2.  I have read the attached Verified Complaint and based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3.  I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed on: January 17, 2017

_____
Gene H. Kim